**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| DBR NETWORK RVOC LIVING TRUST, | ) | |
| BARBARA REDMOND AND | ) | |
| DESHAWN REILLY, | ) | |
| | ) | |
| Plaintiffs, | ) | Civil Action File No. _____ |
| v. | ) | |
| | ) | JURY TRIAL DEMANDED |
| WELLS FARGO BANK, N.A., and | ) | |
| LEDIA FRIONA, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**PLAINTIFF'S COMPLAINT FOR RECOVERY OF ACTUAL, PUNITIVE AND
TREBLE DAMAGES**

COMES NOW, Plaintiffs DBR Network RVOC Living Trust ("Plaintiff DBR"), Barbara

Redmond ("Plaintiff Redmond") and DeShawn Reilly ("Plaintiff Reilly") (collectively

"Plaintiffs"), by and through their attorneys of record, and makes and files this Complaint against

the above-named Defendants, Wells Fargo Bank, N.A. (hereafter "Defendant Wells Fargo") and

Ledia Friona (hereafter "Defendant Friona") (collectively "Defendants"), and shows as follows:

**INTRODUCTION**

1.

This is a high-value commercial banking action arising from Defendants' acceptance,

control, prolonged retention, and ultimate disposition of $11,033,107.68 in United States Treasury

funds.

2.

This case is not about confusion or mistake. It is about control.

3.

On May 17, 2024, Plaintiff Redmond presented to Defendants a Treasury instrument for deposit under a restricted endorsement, specifically directing that the instrument be handled as a custodial or special deposit.

4.

Defendant Wells Fargo, through its employee and co-Defendant, Ledia Friona, refused to honor that restriction and instead processed the deposit in a manner that placed full dominion and control of the funds with Defendant Wells Fargo.

5.

Having obtained control, Defendants later claimed that Plaintiffs were "not entitled" to the funds.

6.

Despite that claim, Defendants did not return the funds.

7.

Instead, Defendants retained and controlled over $11 million of Plaintiff's money.

8.

Throughout this period, Defendants delayed, issued inconsistent communications, placed the funds into internal accounts, and ultimately transferred only a "remaining balance."

9.

At no point did Defendant provide to Plaintiffs:

  (a) A lawful basis for retaining the funds;

  (b) A court order, levy, or directive; or

  (c) A complete accounting of all transactions.

2

10.

Defendant Wells Fargo cannot, simultaneously, determine that Plaintiffs are not entitled to funds and also retain and control those same funds for months without lawful authority.

11.

This action seeks to hold Defendants accountable for their wrongful dominion, failure to follow deposit instructions, and failure to account for funds entrusted to it.

## PARTIES, JURISDICTION AND VENUE

12.

Plaintiff DBR Network RVOC Living Trust is a revocable living trust organized under the laws of the Commonwealth of Pennsylvania, acting through its Trustee, Plaintiff Redmond.

13.

Plaintiff Redmond, at all times relevant to this action, was and is a resident of the Commonwealth of Pennsylvania, and is a co-trustee for Plaintiff DBR.

14.

Plaintiff Reilly, at all times relevant to this action, was and is a resident of the State of Florida, and a co-trustee for Plaintiff DBR.

15.

Defendant Wells Fargo is a national banking association with its main office in Sioux Falls, South Dakota, and regularly conducts and transacts banking business in the Commonwealth of Pennsylvania, including in the Eastern District. Once this Defendant has been lawfully served under Pennsylvania law, it shall be subject to the jurisdiction of this Court.

16.

Defendant Ledia Friona is an individual who, at all times relevant to this action, was employed by Defendant Wells Fargo as a bank employee at its branch located in Allentown, Pennsylvania. Defendant Friona, acting within the scope of her employment and individually, was the Wells Fargo employee who refused to process Plaintiff's deposit under the restricted endorsement as presented and who processed the deposit in a manner inconsistent with Plaintiff's express instructions. Upon information and belief, Defendant Friona is a resident of the Commonwealth of Pennsylvania.

17.

The amount in controversy exceeds $75,000, exclusive of interest and costs.

18.

This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a) based on diversity of citizenship between Plaintiffs and Defendants, including Wells Fargo Bank, N.A., a national banking association with its main office in South Dakota, and Ledia Friona.

19.

Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events and omissions giving rise to the claims occurred in Allentown, Pennsylvania, within the Eastern District of Pennsylvania.

**FACTUAL ALLEGATIONS**

**A.  The Restricted Deposit and Initial Control Shift**

20.

On May 17, 2024, Plaintiff DBR, acting through its Trustee and authorized agent, Plaintiff Redmond, presented for deposit at a Wells Fargo branch located in Allentown, Pennsylvania, a

United States Treasury check in the amount of $11,033,107.68. *See* Treasury Check and Deposit

Receipt hetero attached as **Exhibits 1 and 2**.

21.

Plaintiff Redmond expressly directed that the Treasury instrument be deposited with the

following restriction: "For Collection Only to DBR Network RVOC Living Trust FBAR#FX24-

00487542 - Special Deposit."

22.

This restriction was designed to limit Defendant Wells Fargo's role to that of a collecting

agent or custodian, and to hold the funds in a special, restricted deposit, not as a general deposit

subject to Defendant Wells Fargo's unilateral discretion.

23.

Defendant Wells Fargo, through its employee and co-Defendant Friona, refused to process

the deposit under the restricted endorsement as presented.

24.

Instead, Defendants processed the deposit in a manner that stripped the restriction,

effectively removing Plaintiffs' designated limitations on control and vesting full dominion in

Defendant Wells Fargo.

25.

This refusal to honor Plaintiff Redmond's deposit restriction constituted an affirmative

decision to deviate from Plaintiffs' instructions.

26.

As a direct result of Defendants' decision to process the deposit outside the stated restriction, Defendants assumed exclusive dominion and control over $11,033,107.68 in Plaintiffs' funds.

**B. Immediate "Not Entitled" Determination**

27.

On May 30, 2024, within thirteen (13) days of accepting the deposit, Defendant Wells Fargo notified Plaintiff that it had determined Plaintiff was "not entitled" to the funds. *See* May 30th, 2024, Letter hetero attached as **Exhibit 3**.

28.

Defendant reaffirmed that determination on June 11, 2024. *See* June 14, 2024 Letter hetero attached as **Exhibit 4**.

29.

Defendant made this determination within days of accepting the deposit.

30.

Despite determining that Plaintiff was "not entitled" to the funds, Defendant took no steps to return the funds to Plaintiff, to return the funds to the United States Treasury, or to transfer the funds to any lawful recipient.

31.

Defendant's failure to act after its own "not entitled" determination was without lawful authority, without court order, and without any identified legal basis.

## C.  Delay and Continued Control

32.

On June 17, 2024, after Plaintiffs complained to Defendant Wells Fargo and inquired about the determination, Defendant Wells Fargo acknowledged Plaintiff's complaint and stated it was "reviewing" the matter. *See* June 17, 2024 Letter hetero attached as **Exhibit 5**.

33.

On June 28, 2024, Defendant Wells Fargo requested additional time to resolve the matter. *See* June 28, 2024 Letter hetero attached as **Exhibit 6**.

34.

Neither the June 17, 2024 nor the June 28, 2024 communications resolved the matter. Instead, they extended the period during which Defendant Wells Fargo continued to exercise unauthorized dominion and control over Plaintiffs' funds.

35.

Throughout June 2024, Defendant Wells Fargo continued to retain the funds, continued to deny Plaintiffs access to the funds, and failed to identify any lawful authority for thew continued retention.

36.

Defendants did not return the funds to Plaintiffs, to the United States Treasury, or to any other identified lawful recipient during this period.

## D.  Temporary Account and Internal Handling

37.

On July 3, 2024, Defendant Wells Fargo communicated to Plaintiff Redmond that the funds were being held in a "temporary account." *See* July 3, 2024 Letter hetero attached as **Exhibit 7**.

7

38.

Defendant Wells Fargo did not disclose:

(a) The account number of the "temporary account";

(b) The type or category of account;

(c) The terms and conditions governing the account; or

(d) The identity of persons authorized to direct transactions within the account.

39.

Defendant Wells Fargo's use of a "temporary account" reflects a deliberate act of internal handling and ongoing control over Plaintiffs' funds, beyond the scope of any banking relationship with Plaintiffs.

40.

Upon information and belief, Defendant Wells Fargo transferred, utilized, invested, or otherwise benefited from the funds during the period in which they were held in the "temporary account."

### E. Four-Month Retention

41.

Defendant Wells Fargo, in conjunction with Defendant Friona, retained control and possession of Plaintiffs' funds from May 17, 2024 until at least September 24, 2024, a period of approximately four months and seven days.

42.

During the entirety of this period:

(a) Defendant Wells Fargo had already determined, on two separate occasions, that Plaintiff was "not entitled" to the funds;

(b) Defendant Wells Fargo failed to return the funds to Plaintiffs;

(c) Defendant Wells Fargo failed to identify any court order, IRS levy, Treasury directive, or other lawful authority authorizing continued retention or any transfer of the funds; and

(d) Defendant Wells Fargo failed to provide Plaintiffs with an accounting of the funds or any communication identifying what was being done with the funds.

43.

Defendant Wells Fargo's continued retention of $11,033,107.68 for over four months without lawful authority, reflects prolonged and unauthorized dominion inconsistent with Plaintiff's possessory rights

F. Transfer of "Remaining Balance"

44.

On September 25, 2024, Defendant Wells Fargo communicated to Plaintiff that it had transferred the "remaining balance" of the funds to Internal Revenue Service (IRS) on September 24, 2024. *See* September 25, 2024 Letter hetero attached as **Exhibit 8**.

45.

The phrase "remaining balance" necessarily implies that the funds transferred on September 24, 2024 were less than the full $11,033,107.68 that Defendant Wells Fargo accepted on May 17, 2024, and that some portion of the funds had been moved, utilized, or applied prior to the September transfer.

46.

Defendant Wells Fargo has failed and refused to provide:

(a) Wire transfer confirmations;

9

(b) ACH or other transfer documentation;

(c) IRS receipts, correspondence, or documentation;

(d) A ledger or transaction history for the period May 17 through September 24, 2024; or

(e) A complete accounting of all funds received, held, moved, applied, or transferred.

47.

Defendants have never provided a full accounting of any kind regarding the funds entrusted to it by Plaintiffs.

## G. Possessory Interest and Entitlement

48.

Plaintiff deposited a United States Treasury instrument that was accepted by Defendant Wells Fargo.

49.

Acceptance of the instrument created, at minimum, a possessory interest in the funds sufficient to support Plaintiffs' conversion and related claims under Pennsylvania law.

50.

The question of whether Plaintiffs is ultimately "entitled" to the underlying funds is a matter for judicial determination, so it does not vest in Defendant Wells Fargo unilateral authority to retain, transfer, or otherwise dispose of those funds without lawful process.

51.

Defendant Wells Fargo's own "not entitled" determination, if valid, required it to take affirmative steps, returning the funds to the appropriate party, obtaining a court order, complying with a government directive, not simply retain and later transfer the funds without accounting.

## COUNT I - CONVERSION

52.

Plaintiff incorporates by reference the allegations contained in Paragraphs 1 through 51 as if fully set forth herein.

53.

At all times relevant to this action, Plaintiffs held a possessory interest in the $11,033,107.68 deposited with Defendant Wells Fargo on May 17, 2024.

54.

Defendants Wells Fargo and Ledia Friona exercised dominion and control over those funds in a manner inconsistent with Plaintiff's rights.

55.

Defendants' dominion was exercised without Plaintiffs' consent and without lawful authority.

56.

Defendants retained the funds after expressly determining that Plaintiffs were "not entitled" to them, without obtaining a court order, levy, or other legal process authorizing continued retention.

57.

Defendants transferred the funds, or a portion thereof, without providing Plaintiffs with any documentation, authority, or accounting.

58.

Defendants' intentional acts and omissions constitute conversion under Pennsylvania law.

59.

11

As a direct and proximate result of Defendants' conversion, Plaintiffs have suffered significant monetary damages in excess of $75,000, exclusive of interest and costs.

## COUNT II - BREACH OF CONTRACT / DEPOSIT AGREEMENT

60.

Plaintiff incorporates by reference the allegations contained in Paragraphs 1 through 59 as if fully set forth herein.

61.

A contractual relationship existed between Plaintiffs and Defendant Wells Fargo governing the deposit, handling, and return of the funds deposited on May 17, 2024.

62.

Plaintiffs performed all obligations required of it under the parties' agreement.

63.

Defendants materially breached the agreement by:

(a) Refusing, through Defendant Friona, to honor the restricted endorsement presented by Plaintiff at the time of deposit;

(b) Improperly processing the deposit, via Defendant Friona, in a manner inconsistent with Plaintiff's express instructions;

(c) Retaining the funds after determining Plaintiff was "not entitled," without lawful authority and without returning the funds to Plaintiff;

(d) Failing to provide Plaintiff with an accounting of the funds; and

(e) Transferring the funds, or a portion thereof, without Plaintiffs' authorization and without providing documentation of the transfer.

64.

As a direct and proximate result of Defendants' breach, Plaintiffs have suffered significant monetary damages in excess of $75,000, exclusive of interest and costs.

### COUNT III - NEGLIGENCE

65.

Plaintiff incorporates by reference the allegations contained in Paragraphs 1 through 64 as if fully set forth herein.

66.

Defendants, in accepting a deposit from Plaintiffs, owed Plaintiffs a duty of care to process the deposit in accordance with Plaintiffs' instructions, applicable banking law, and reasonable commercial banking standards.

67.

Defendants breached that duty by:

(a) Improperly processing the deposit through Defendant Friona's disregard of Plaintiff Redmond's restricted endorsement;

(b) Failing to safeguard the funds entrusted to them;

(c) Failing to act within reasonable commercial banking standards in handling, retaining, and transferring the funds; and

(d) Engaging in unsafe and unsound banking practices in the handling of a $11,033,107.68 United States Treasury instrument.

68.

Defendants' negligent conduct was a direct and proximate cause of Plaintiff's damages.

69.

As a direct and proximate result of Defendants' negligence, Plaintiffs have suffered significant monetary damages in excess of $75,000, exclusive of interest and costs.

13

## COUNT IV - UNJUST ENRICHMENT

70.

Plaintiff incorporates by reference the allegations contained in Paragraphs 1 through 69 as if fully set forth herein.

71.

Defendants received, retained, and benefited from possession of $11,033,107.68 in United States Treasury funds belonging to Plaintiffs.

72.

Defendants retained those funds for over four months, during which period Defendant Wells Fargo had the use, investment, and financial benefit of the funds.

73.

It would be unjust and inequitable to permit Defendant Wells Fargo to retain any such benefit without full accounting and compensation to Plaintiffs.

74.

Plaintiffs are entitled to restitution and disgorgement of all benefit conferred upon Defendant Wells Fargo and Defendant Friona, including but not limited to interest earned, investment returns, or financial benefit derived from holding the funds.

## COUNT V - BAILMENT

75.

Plaintiff incorporates by reference the allegations contained in Paragraphs 1 through 74 as if fully set forth herein.

14

76.

Plaintiff Redmond, on behalf of the other Plaintiffs in this matter, tendered the $11,033,107.68 Treasury instrument to Defendants as a special deposit with the specific instruction that Defendant Wells Fargo act solely as a custodian and collecting agent.

77.

Defendants refused to honor the restricted endorsement, but nonetheless accepted possession and assumed control of the funds, thereby creating a bailment relationship.

78.

As bailee, Defendants owed Plaintiffs the duty to safely keep and return the funds, or to faithfully discharge the purpose for which the bailment was created.

79.

Defendants breached its duties as bailee by retaining the funds without authority, failing to return them upon demand, and transferring them without accounting.

80.

As a direct and proximate result of Defendants' breach of its bailment obligations, Plaintiffs have suffered damages in an amount no less than $11,033,107.68, plus interest, costs, and all additional amounts to be determined at trial.

## COUNT VI - ACCOUNTING

81.

Plaintiff incorporates by reference the allegations contained in Paragraphs 1 through 80 as if fully set forth herein.

15

82.

Defendant Wells Fargo has exclusive custody and control over all records, ledgers, transaction logs, transfer documentation, and communications pertaining to the $11,033,107.68 deposited by Plaintiff Redmond on May 17, 2024.

83.

Plaintiffs have no independent access to those records and cannot determine the full disposition of its funds without Defendants' disclosure.

84.

The relationship between the parties, Defendant Wells Fargo accepted dominion over the funds, and Defendant Wells Fargo's failure to account creates a right to an equitable accounting.

85.

Plaintiffs are entitled to a full and complete accounting of:

(a) Every account in which the funds were held from May 17, 2024 through September 24, 2024;

(b) Every transaction, movement, transfer, investment, or application of the funds during that period;

(c) The identity of every recipient of any portion of the funds;

(d) All interest, earnings, or benefit derived from holding the funds; and

(e) The complete disposition of the "remaining balance" allegedly transferred on September 24, 2024.

**COUNT VII - Violation of Pennsylvania's Unfair Trade Practices and Consumer Protection Law (73 P.S. § 201, et. seq.)**

86.

Plaintiffs hereby incorporates paragraphs 1 through 85 as if fully set forth herein.

87.

At all times relevant to this action, Defendants used deceptive measures to prevent Plaintiffs from accessing the monetary funds that were lawfully obtained by Plaintiffs and placed in Plaintiffs' bank account.

88.

Defendants' deceptive  practices caused confusion and misunderstandings, and Plaintiff was never informed by Defendants of the reason why they could not access the funds in their bank account.

89.

Defendants not only prevented Plaintiffs from accessing the monetary funds in their account but also failed to return the money to Plaintiffs.

90.

Defendants' actions caused monetary harm to Plaintiffs.

91.

Defendants' actions constitute unfair trade practices in violation of Pennsylvania law, which entitles Plaintiffs to actual and treble damages, exceeding $75,000, exclusive of interest and costs.

**COUNT VIII – PUNITIVE DAMAGES**

92.

Plaintiffs hereby incorporate paragraphs 1 through 91 as if fully set forth herein.

17

93.

The acts and omissions of Defendants Wells Fargo and Ledia Friona, specifically Defendant Friona's intentional refusal to honor Plaintiffs' restricted endorsement and Defendant Wells Fargo's subsequent unauthorized four-month retention of over $11 million despite its purported determination that Plaintiffs were not entitled to the funds, constitute outrageous conduct performed with a reckless indifference to the rights of Plaintiffs.

94.

Defendants' joint actions of conversion, fraud and deception caused monetary harm to the Plaintiffs, as noted above.

95.

Defendants' actions were outrageous, in that the actions were intentional, malicious, wanton, willful or oppressive and showed reckless indifference to the interests of Plaintiffs.

96.

Pursuant to Pennsylvania law, Plaintiff is entitled to an award of punitive damages against Defendants, in an amount to be determined by the jury, to punish Defendants for their outrageous conduct and to deter them and others from engaging in similar conduct in the future.

## COUNT IX - ATTORNEY'S FEES

97.

Plaintiff incorporates by reference the allegations contained in Paragraphs 1 through 95 as if fully set forth herein.

98.

Plaintiff is entitled to an award of reasonable attorney's fees and costs of litigation pursuant to 42 Pa. C.S. § 2503, because Defendants' conduct has been arbitrary, vexatious, or in bad faith.

18

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays that this Court enter judgment in her favor and against Defendants as follows:

(a) A trial by jury on all issues so triable;

(b) That process and summons issue requiring Defendants to appear as provided by law and to answer the allegations of this Complaint;

(c) Compensatory damages representing the full amount of funds accepted by Defendants and for which Defendants have failed to account in excess of $75,000, exclusive of interest and cost;

(d) Punitive damages against Defendants Wells Fargo and Ledia Friona in an amount to be determined at trial to punish and deter such wrongful conduct;

(e) Treble damages for Defendants' violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law, in an amount to be determined at trial;

(f) Disgorgement of all profits, interest, investment returns, and financial benefit derived by Defendants from their retention and control of Plaintiffs' funds from May 17, 2024, through September 24, 2024;

(g) Attorney's fees and expenses of litigation pursuant to 42 Pa. C.S. § 2503, due to Defendants' bad faith, stubborn litigiousness, or causing Plaintiff unnecessary trouble and expense;

(h) All court costs and post-judgment interest; and;

(i) Such other and further relief as this Court deems just and appropriate.

Respectfully submitted, this 15th day of May 2026.

*Kenneth C. Edelin, Jr.*
Kenneth C. Edelin, Jr., Esq.
Pennsylvania Bar No. 79922
***Attorney for Plaintiffs***

**EDELIN AND ASSOCIATES, LLC**
1515 Market Street, Ste 1200
Philadelphia, PA 19102
Tel: (215) 316-9116
Fax: 215.501.5673
Email: kedelinlaw@gmail.com

20